United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.O.R.E., LLC, et al., | Case No.  12-cv-03609-JST |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| UNITED STATES OF AMERICA, | Re: ECF Nos. 84, 106 |
| Defendant. | |

Before the Court are Defendant United States' Motions to Dismiss and for Judgment on

the Pleadings.  ECF Nos. 84, 106.  For the reasons set forth below, the Motion to Dismiss is

GRANTED and the Motion for Judgment on the Pleadings is DENIED AS MOOT.

## I.    BACKGROUND

### A.    Factual Allegations[1]

In this action, Plaintiffs, M.O.R.E. Partners LLC, Mark Ottovich, Randy Ottovich, Harvey

Ottovich, and Karen Rayl bring claims against the United States[2] for quiet title and wrongful levy.

ECF No. 27.  Plaintiffs seek to quiet title to, and remove tax levies from, two separate properties

in Alameda County.  The first is a residential property located at 36224 Pecan Court, Fremont,

California (the "Pecan Court property").  Id., ¶ 4.  The second is a commercial property located at

15601 Washington Avenue, San Lorenzo, California (the "Washington Avenue property").  Id.

The individual plaintiffs are siblings and are the children of Jeanette and Jack Ottovich.  Id., ¶ 12.

---

[1] The following allegations are taken from the Second Amended Complaint ("SAC").  ECF No.
27.  The Court accepts the allegations as true for the purpose of resolving the United States'
motion to dismiss.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

[2] The SAC states that its second cause of action for wrongful levy is brought against "Defendant
Aurora," ECF No. 27 at 6.  Since that entity is mentioned nowhere else in the complaint, the Court
will assume that the claim is actually brought against the United States.

United States District Court
Northern District of California

Jeanette and Jack Ottovich previously owned both properties as joint tenants.  Id., ¶ 12.  In 1993, the Pecan Court property was transferred to the Ottovich Family Revocable Trust.  Id., ¶ 13. Jeanette Ottovich passed away in February of 2000, and all interest in the Washington Avenue property transferred to Jack Ottovich as the surviving tenant.  Id., ¶¶ 15, 17.  Jack Ottovich passed away in April of 2000.  Id., ¶ 19.

Plaintiffs assert that upon the passing of Jack Ottovich, the estate of Jeannette Ottovich (hereafter "the Estate") filed a petition in the Alameda County Superior Court in December of 2004.  Id., ¶¶ 20-21.  Plaintiffs further allege that the Superior Court found that the Estate did not have an interest in the Washington Avenue Property and recognized the equitable interests of Mark and Harvey Ottovich in the property.  Id., ¶ 21.  For eight years, the Pecan Court property was retained by beneficiaries of the Ottovich Family Revocable Trust and the Washington Avenue property was retained by Mark and Harvey Ottovich.  Id., ¶ 22.  The Ottovich Family Revocable Trust then transferred its interest in the Pecan Avenue property to Plaintiff M.O.R.E. Partners LLC.  Plaintiffs further allege that Mark Ottovich continued to pay necessary taxes on the Washington Property, and that Plaintiffs filed an amended estate tax return (Form 706)[3] to demonstrate that the Estate did not owe taxes on the properties.  Id., ¶¶ 24-25.

Plaintiffs then state that on January 18, 2011, IRS agents placed liens, seized, and levied both properties because the Estate continued to owe $167,000 in taxes.  Id., ¶¶ 26, 27.  In February of 2011, the IRS then served a notice of seizure for both properties on Mark Ottovich, and Mark Ottovich appealed this notice.  Id., ¶ 31.  Plaintiffs allege that Randy Ottovich later received a letter from the IRS stating that the liens had expired and that the IRS would not continue collection actions against the Plaintiffs.  Id., ¶¶ 33-34.  However, the United States continues to improperly act on the liens and levies on the two properties, with the intent to sell them.  Id., ¶35.

In their SAC, Plaintiffs assert that the Internal Revenue Service ("IRS") levies on the

---

[3] IRS Form 706 is the United States estate tax return form required to be filed for every estate valued at over $60,000.  See 26 CFR § 20.6018-1(a) ("A return must be filed on Form 706 for the estate of every citizen or resident of the United States whose gross estate exceeded $60,000 in value on the date of his death.").

Pecan Court and Washington Avenue properties, for the purpose of collecting taxes owed by the Estate, are wrongful because the Estate does not own the properties.  Id., ¶ 36.  Plaintiffs seek an injunction preventing the United States from enforcing the levies.  Id. at 8; 26 U.S.C. § 7426.  Plaintiffs also seek a declaration that M.O.R.E. LLC is the owner of the Pecan Court property and that Mark and Harvey Ottovich hold an equitable interest in the Washington Avenue property.  ECF No. 27 at ¶¶ 40, 47.

**B.  Procedural History**

Plaintiffs filed their first complaint on July 11, 2012.  ECF No. 1.  On September 12, 2012, the United States filed a motion to dismiss on the grounds, *inter alia*, that Plaintiffs' claims were time-barred.  ECF No. 6.  On October 15, 2012, the court denied the motion because there appeared to be discrepancy between the recorded documents and the order of the probate court affecting who owned the properties.  ECF No. 21 at 7.  However, the Court denied the motion without prejudice, and granted leave to the United States to file it again "once the facts are established."  Id.

Plaintiffs subsequently filed a Second Amended Complaint.  ECF No. 27.  The United States filed an answer, as well as a counterclaim against Mark Ottovich, Harvey Ottovich, Randy Ottovich, and Karen Rayl.  ECF No. 30.  The United States contends that the Estate remains indebted to the United States in the amount of $199,308.48.  Id. at 6.  The United States alleges that counter-claim defendants Karen Rayl, Harvey Ottovich, and Randy Ottovich are liable for the unpaid estate taxes as trustees of the Ottovich Family Revocable Trust.  Id. at 6-7.  Alternatively, the United States alleges that Karen Rayl, Harvey Ottovich, Randy Ottovich, and Mark Ottovich are liable as beneficial transferees of assets received from the estate.  Id.

Now before the Court are two motions from the United States.[4]  The first motion is a motion to dismiss and for judgment on the pleadings moving the Court to dismiss the wrongful

---

[4] In both motions, the United States relies on the original complaint and exhibits Plaintiffs submitted at ECF No. 1.  However, this Court will rely on the allegations in the Second Amended Complaint, ECF No. 27, since that is the operative complaint.  See Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   levy and quiet title actions on the grounds that, because they are untimely, the Court lacks subject

2   matter jurisdiction over the claims.  ECF No. 84.  The second motion is a motion for judgment on

3   the pleadings as to the quiet title and wrongful levy claims against the Pecan Court property

4   because the IRS's lien rights attached prior to any alleged transfer of that property.  ECF No. 106.

5   **C.**     **Requests for Judicial Notice**

6           Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not

7   subject to reasonable dispute" because they are either "generally known within the trial court's

8   territorial jurisdiction," or they "can be accurately and readily determined from sources whose

9   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

10          "Generally, a district court may not consider any material beyond the pleadings in ruling

11  on a Rule 12(b)(6) motion."  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542,

12  1555 n. 19 (9th Cir.1990).  Federal Rule of Civil Procedure 12(d) provides: "If, on a motion under

13  Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

14  court, the motion must be treated as one for summary judgment under Rule 56."  However, courts

15  may properly take judicial notice of materials attached to the complaint.  See Lee v. City of Los

16  Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).  If the documents are not attached to the

17  complaint, they may be considered if their authenticity is not contested and the complaint

18  "necessarily relies on them."  Id. at 688.  This has become known as the "incorporation by

19  reference" doctrine.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.2005).  The incorporation by

20  reference doctrine "is a narrow exception aimed at cases interpreting, for example, a contract. It is

21  not intended to grant litigants license to ignore the distinction between motions to dismiss and

22  motions for summary judgment."  Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).  See,

23  e.g., Cooper v. Pickett, 137 F.3d 616, 622-23 (9th Cir.1997) (declining to consider documents

24  referred to but not central to plaintiff's complaint).

25          The United States has attached a document to its motion to dismiss.  See ECF No. 109, Ex.

26  1. Exhibit 1 is a copy of an official court record from the Alameda County Superior Court.  The

27  record in question is an order from the probate court dated October 29, 2004, approving a

28  settlement of certain disputes among Karen Rayl, Harvey Ottovich, Randy Ottovich, and the

United States District Court
Northern District of California

1    Estate.  It includes the order itself, copies of Jeannette Ottovich and Jack Ottovich's wills, a

2    declaration of the family trust, the release agreement, and the stipulation of the compromise and

3    settlement of claims against the estate.

4         The Court will construe Defendant's submission of these documents in connection with its

5    motion as a request for judicial notice, and grant the request.  The Alameda County Superior Court

6    order is generally subject to notice, because it is a matter of public record and its authenticity of

7    the document is not disputed.[5]  See Knievel, 393 F.3d at 1076 (explaining the "incorporation by

8    reference" doctrine extends to situations where plaintiff's complaint relies on the contents of the

9    document, defendant attaches the document to its motion to dismiss, and the parties do not dispute

10   the authenticity).  Plaintiffs refer to and rely on these documents in the SAC.  See, e.g., ECF No.

11   27 at 4 (The probate court found that "estate of Ms. Jeanette Ottovich had no interest in the

12   Washington Property and instead recognize[ed] the equitable interests of Plaintiffs Mark and

13   Harvey Ottovich in the Property.").  The Court will take judicial notice of Exhibit 1.

14        Plaintiff Mark Ottovich asks the Court to take judicial notice of four different documents

15   in his opposition to the Motion for Judgment on the Pleadings.  See ECF No. 113.  Exhibit 1 is an

16   amended 706 form submitted by Karen Rayl on October 14, 2014.  The Second Amended

17   Complaint does not refer to or rely on this document; it refers only to an amended 706 form

18   submitted in 2007.  ECF No. 27, ¶ 25.  Because the Complaint does not rely on the 2014 amended

19   form, the Court will not take judicial notice of Exhibit 1.  Exhibit 2 is a copy of the Ottovich

20   Family Revocable Trust.  This document was already submitted by the Defendant as part of

21   Exhibit 1.  See ECF No. 109, Ex. 1.  The Court will therefore deny the request as redundant.

22   Exhibit 3 purports to be a copy of the probate order submitted by Defendant, but it appears to be

23   both incomplete and with pages out of order.  The Court will therefore deny this request as well.

24

25   _____

     [5] Plaintiff Mark Ottovich does not dispute the authenticity of the Alameda County Superior Court
26   order submitted by the United States, ECF No. 109, but he does argue that the exhibit is not a
     complete copy of the order.  ECF No. 117 at 1.  Rather than submit a true and correct copy of the
27   order, however, he submits only some pages that he contends were, or should have been, attached
     to that order as an exhibit.  Id. at 2.  The Court finds that Ottovich has failed to meet his burden of
28   demonstrating that his purported exhibit is authentic, Fed. R. Evid. 901(a), and so declines to
     consider it.

1    Exhibit 4 is a letter dated March 25, 2011 an Internal Revenue Service Appeals Team Manager to

2    Harvey Ottovich.  That document is attached to the SAC as an exhibit and is already before the

3    Court.  See ECF No. 27-1.  The Court will therefore deny the request for judicial notice as

4    redundant.

5    **II.    LEGAL STANDARD**

6          "After the pleadings are closed—but early enough not to delay trial—a party may move for

7    judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The analysis for Rule 12(c) motions for

8    judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6) . . . ."

9    Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotation omitted).  To evaluate a

10   Rule 12(b)(6) motion to dismiss, the court accepts the material facts alleged in the complaint,

11   together with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250

12   F.3d 729, 732 (9th Cir. 2001).  A plaintiff must allege facts that are enough to raise his/her right to

13   relief "above the speculative level."  Bell Atl. Corp. v. Twombley, 550 U.S. 544 (2007).

14         In sum, a "judgment on the pleadings is properly granted when, taking all the allegations in

15   the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of

16   law."  Fajardo v. Cnty. of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).  "Finally, although Rule

17   12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion

18   with leave to amend, and to simply grant dismissal of the action instead of entry of judgment."

19   Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted).

20   **III.    ANALYSIS**

21         **A.    Sovereign Immunity**

22         The United States moves to dismiss the SAC for lack of subject matter jurisdiction.  The

23   United States argues that the government has not waived its sovereign immunity, and accordingly

24   is immune from suit.

25         In order to establish subject matter jurisdiction in an action against the United States, there

26   must be: (1) "statutory authority vesting a district court with subject matter jurisdiction" and (2) "a

27   waiver of sovereign immunity."  Alvarado v. Table Mountain Rancheria, 509 F.3d 1008, 1016

28   (9th Cir. 2007).  Even where statutory authority vests the district courts with subject matter

United States District Court
Northern District of California

6

1   jurisdiction, the United States cannot be sued unless it has expressly consented to be sued.  <u>Dunn</u>

2   <u>& Black P.S. v. United States</u>, 492 F.3d 1084, 1087-88 (9th Cir. 2007).  Waivers of sovereign

3   immunity cannot be implied, but instead must be unequivocally expressed, and are to be strictly

4   construed in favor of the sovereign.  <u>Id.</u> at 1088.  When the party fails to establish the United

5   States' consent to be sued, "dismissal of the action is required."  <u>Id.</u>

6         When an action for wrongful levy is brought against the United States, the United States

7   waives sovereign immunity only if the action is filed within nine months of the date of the levy.

8   26 U.S.C. § 6532(c)(1).  The United States argues that it has not waived sovereign immunity

9   because Plaintiffs failed to allege that their complaint was filed within the nine month statute of

10  limitations.  ECF No. 84 at 6.  Additionally, if a plaintiff has filed a collection appeal request, the

11  statute of limitations is extended to the shorter of (1) twelve months from the date of filing an

12  appeal or (2) six months from the date the plaintiff received notice that the appeal was denied.  26

13  U.S.C. § 6532(c)(2).  The United States argues that Plaintiffs did not file their complaint within

14  twelve months of filing their collection appeal request.  ECF No. 84 at 7.

15        The United States purports to bring its motion to dismiss under Rule 12(b)(1) of the

16  Federal Rules of Civil Procedure, which allows a motion to dismiss for "lack of subject matter

17  jurisdiction."  ECF No. 84 at 1.  Federal statutory time limitations on suits against the government,

18  however, are not jurisdictional in nature.  <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95

19  (1990).  Because the question whether Plaintiffs' claim is barred by the statute of limitations is not

20  a jurisdictional question, it should have been raised through a Rule 12(b)(6) motion to dismiss for

21  failure to state a claim, not a Rule 12(b)(1) motion to dismiss for lack of jurisdiction.  <u>Supermail</u>

22  <u>Cargo, Inc. v. United States</u>, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).

23        Finally, because the applicability of equitable tolling often relates to matters outside of a

24  complaint, it is not "generally amenable to resolution on a Rule 12(b)(6) motion."  <u>Supermail</u>, 68

25  F.3d at 1206 (citing <u>Cervantes v. City of San Diego</u>, F.3d 1273, 1276 (9th Cir. 1993)).  A

26  complaint cannot be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the

27  plaintiff can prove no set of facts that would establish the timeliness of the claim."  <u>Id.</u> at 1207.

28  ///

United States District Court
Northern District of California

United States District Court
Northern District of California

### 1.      Statute of Limitations in Wrongful Levy

Plaintiffs respond to the United States' motion in several ways.  First, they contend that the motion is really an improper motion for summary judgment because the United States attaches "evidence outside of the four corners of any pleadings."  ECF No. 90 at 3.  As previously noted, a Court may take judicial notice of documents that a complaint relies on or refers to.  See Knievel, 393 F.3d at 1076.  That is what happened here.  Plaintiffs' argument is unavailing.

Plaintiffs next argue that the United States' motion is an improper motion for reconsideration of the Court's prior order denying its earlier motion to dismiss.  ECF No. 90 at 2. But the Court's prior order denying the United States' motion to dismiss explicitly permitted the United States to make the same argument in a future motion "once the facts are established."  ECF No. 21 at 7.  The United States merely accepted the Court's invitation.

Plaintiffs then argue that the United States should be estopped from making the statute of limitations defense because the Estate submitted an amended return estate tax return.  ECF No. 90 at 5-6.  Plaintiffs allege that the IRS never acted on the return for several years but instead the IRS later seized and levied the properties.  Id. at 6.  Plaintiffs also raise the argument that because Plaintiffs were pursuing administrative remedies, such as the collection appeals request, its claims should be tolled.  Id. at 7.  Plaintiffs' arguments invoke the concepts of both equitable estoppel and equitable tolling.[6]

"Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant."  Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (citation omitted), overruled on other grounds by Socop– Gonzalez v. INS, 272 F.3d 1176, 1194-96 (9th Cir.2001) (en banc).  "A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of

---

[6] Plaintiffs also allege in their opposition (although not in their complaint) that the government is guilty of unclean hands.  That allegation is not relevant to the Court's statute of limitations inquiry.

improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied." Id. "Additionally, when estoppel is sought against the government, there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." Estate of Amaro v. City of Oakland, 653 F.3d 808, 813 (9th Cir. 2011).

By contrast, equitable tolling focuses on a plaintiff's excusable ignorance and the lack of any prejudice to the defendant. Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir. 2003). "The doctrine of equitable tolling 'has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period.'" Id. (quoting Leorna v. U.S. Dep't of State, 105 F.3d 548, 551 (9th Cir. 1997)).

Plaintiffs make only passing reference to the doctrine of equitable tolling, but plead no facts in their complaint to support its application.  Plaintiffs allege no facts that would support a finding that they were or should have been unaware that the statute of limitations was running. They were fully aware of the facts underlying their claim at all relevant times, and neither the United States nor anyone else did anything to conceal either those facts or the existence of a statute of limitations. See Hall v. Levorse, 536 F. App'x 690, 691 (9th Cir. 2013) ("Contrary to Hall's contentions, neither equitable tolling nor equitable estoppel applies because Hall should have reasonably been aware of the existence of his claims within the limitations period and defendants did not wrongfully prevent Hall from asserting his claims."); Li v. Cnty. of San Diego, 259 F. App'x 912, 913 (9th Cir. 2007) ("Li's contention that the district court should have applied equitable tolling because he was not aware of the basis of his claims due to defendants' fraudulent concealment is unpersuasive, because Li failed to adequately allege any acts on the part of defendants to prevent him from detecting the facts sufficient to support bringing his claims on a timely basis.").  Nor have Appellants argued that any "extraordinary circumstances beyond [their] control made it impossible to file the claims on time." Seattle Audubon Soc'y v. Robertson, 931 F.2d 590, 595 (9th Cir.1991) (noting that lack of access to courts caused by war supports equitable tolling); see also Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir.1992) (holding that equitable

United States District Court
Northern District of California

9

tolling is applicable only in "extreme cases").

Plaintiffs also have not alleged any facts to support their equitable estoppel arguments because they fail to allege any affirmative government misconduct.  They complain that they filed an amended return with the IRS, which the IRS did not act upon.  But that was an action the plaintiffs took, not conduct or a representation by the defendant.  In any event, the IRS has "ample discretion to refuse to accept" amended returns.  See, e.g., Dover Corp. & Subsidiaries v. C.I.R., 148 F.3d 70, 73 (2d Cir. at 1998), Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir. 1977) (per curiam).  The amended return is therefore irrelevant to the issue of equitable estoppel.[7]

Plaintiffs also point out they were lead to believe that the IRS would no longer pursue its levy based on a letter that was sent to Mr. Harvey Ottovich on March 25, 2011.  See ECF No. 27-1.  The letter states that notices of levy issued to individual beneficiaries had expired and that the IRS no longer intended to pursue collection against the beneficiaries' individual assets.  Id.  However, the March 25 letter did not state that the gross estate would no longer be liable.  See id.; 26 U.S.C. § 6324(a)(3).  This letter is not evidence of affirmative government misconduct.

In Schweiker v. Hansen, 450 U.S. 785 (1981), the Supreme Court found no need to determine whether the government was estopped by the actions of its agent because the agent's actions did not rise to the level of affirmative misconduct.  Id. at 789.  In that case, in response to a claimant's oral inquiry, a Social Security Administration employee informed the claimant that she was not entitled to benefits and, contrary to the agency manual, failed to advise the claimant that she should file a written application for benefits.  Id.  The Court acknowledged that the agent's conduct was in error, but found that it nonetheless "did not cause [the plaintiff] to take action . . . or fail to take action . . . that respondent could not correct at any time."  Id.  Even construing the March 25 letter in the light most favorable to Plaintiffs, the Court is unable to conclude that the

---

[7] It also appears that Plaintiffs' amended 706 form was not timely.  Amended 706 forms must be filed within three years from the time of filing the original return or within two years from the date the disputed tax was paid.  26 U.S.C. § 6511.  Jeannette Ottovich passed away in 2000.  Form 706 must be filed within nine months of the decedent's death and can be eligible for an automatic six month extension to file.  See Instructions for Form 706.  An amended form must be filed within three years from filing the original 706.  26 U.S.C. § 6511.

United States District Court
Northern District of California

1    IRS' conduct here is any more culpable than the conduct in <u>Schweiker</u>.

2        In short, the Court concludes that Plaintiffs' wrongful levy claim must be dismissed

3    because Plaintiffs have failed to allege a plausible claim that equitable tolling or estoppel applies

4    to the statute of limitations outlined in 26 U.S.C. section 6532(c).

5                    **2.        September 2012 Notice of Determination**

6        Finally, Plaintiff Karen Rayl claims that even if the other plaintiffs' claims are time-barred,

7    hers is not.  She points to a September 14, 2012 Notice of Determination she received, ECF No.

8    91-1, and suggests that this document was the triggering event for the statute of limitations, such

9    that her complaint in this court was timely.  ECF No. 90 at 8.

10       By its plain terms, the Notice is directed to the Estate (of which Rayl was the Executrix)

11   and not to Rayl personally.  Also, the notice pertains to a collection action under 26 U.S.C.

12   § 6320, and the second page notes that this relates to a lien, not a wrongful levy as alleged in

13   Plaintiffs' SAC.

14       The Notice of Determination is not relevant to the Court's determination and does not give

15   Rayl different rights than those held by the remaining plaintiffs.

16                  **3.        Statute of Limitations for Plaintiffs' Quiet Title Claim**

17       Civil actions against the United States are generally barred unless the complaint is filed

18   within six years after the right of action first accrues.  28 U.S.C. § 2401(a).  This includes quiet

19   title actions.  <u>See</u>, <u>e.g.</u>, <u>Nesovic v. United States</u>, 71 F.3d 776, 778 (9th Cir. 1995) (applying the

20   six-year statute of limitations to plaintiff's quiet title action against the United States).

21       Here, the Estate filed its 706 tax form in 2002.  Subsequently, a lien rose in favor of the

22   IRS and against the property of the Estate.  <u>See</u> 26 U.S.C. § 6324(a)(1) (a lien attaches on the

23   gross estate if the estate tax is not paid in full or unenforceable); 26 U.S.C. §6321 (a lien on all

24   property and rights to property for the person who is liable for taxes and neglects or refuses to

25   pay).  The United States argues that Plaintiffs had six years from the date the Estate's taxes were

26   assessed to file their complaint.  <u>See also</u> <u>Nesovic</u>, 71 F.3d at 778 (holding that the statute of

27   limitations accrued when the unpaid taxes were assessed).  Because Plaintiffs did not file the

28   action within six years of the time the lien arose, the United States argues that the quiet title action

United States District Court
Northern District of California

11

must also be dismissed as untimely.

Although equitable tolling and estoppel may relieve a litigant's failure to file against the government within the statutory filing deadline, as discussed above, Plaintiffs' Complaint contains no set of facts that would establish timeliness of the claim through tolling or estoppel.

Accordingly, dismissal of the quiet title action is also appropriate because this Court lacks jurisdiction.  The United States' motion is GRANTED.

> **B.** **IRS's Motion for Judgment On the Pleadings as to the Pecan Court Property**

The United States has filed a separate motion seeking judgment on the pleadings as to only the Pecan Court property.  ECF. No. 106.  In light of the Court's order granting the United States' other motion, this second motion is DENIED AS MOOT.

<strong>CONCLUSION</strong>

The Court finds that the Government has not waived sovereign immunity with respect to the wrongful levy and quiet title claims because those claims were not timely filed.  The United States' motion for judgment on the pleadings is GRANTED, and the case is DISMISSED.

A district court may dismiss a complaint without leave to amend if amendment would be futile.  Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 600 (9th Cir. 2014).  The Court asked Plaintiffs at the hearing on this motion whether there were any additional facts Plaintiffs could plead that might bring them within the statute of limitations, and Plaintiffs identified none.  The Court concludes that amendment would be futile.  Dismissal is without leave to amend.

The Clerk will close the file.

IT IS SO ORDERED.

Dated:  August 28, 2015

_____
JON S. TIGAR
United States District Judge

*United States District Court*
*Northern District of California*